**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**MEGAN FISH,**

                              **Plaintiff,**

  vs.                                                    **1:15-CV-102
(MAD/TWD)**

**1295 AROXY CLEANERS,** *doing business as*
**SPRING FALLS CORPORATION,** *doing business as*
**AROXY DRY CLEANERS,
ESTATE OF HAGOP POLADIAN,**

                              **Defendants.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**OFFICE OF RONALD J. KIM**             **RONALD J. KIM, ESQ.**
P.O. Box 318
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**OFFICE OF GREGORY V. CANALE**     **GREGORY V. CANALE, ESQ.**
456 Bay Road
Queensbury, New York 12804
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Megan Fish commenced the present action against Defendants 1295 Aroxy Cleaners and the Estate of Hagop Poladian[1] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law ("NYSHRL"),

---

[1] Hagop Poladian was named as a Defendant when this action was commenced. Dkt. No. 1. But following Poladian's death, Fish moved to substitute Poladian's estate as a party pursuant to Federal Rule of Civil Procedure 25(a). Dkt. No. 28. The Court granted Fish's motion. Dkt. No. 32.

N.Y. Exec. Law § 290 *et seq.*, as well as various state tort law claims. Dkt. No. 1. Presently before the Court is Defendants' motion for summary judgment. Dkt. No. 23. For the following reasons, Defendants' motion is denied.

## II. BACKGROUND

In September 2011, Fish was hired to work for ARoxy, a laundry and dry cleaning business in Queensbury, New York. Dkt. No. 43-1 ¶ 5. At the time, ARoxy had two locations, a main store and a second, smaller shop on Broad Street. Dkt. No. 43-5 at 24:22-25:12. Sometime in the fall of 2011, Fish was promoted to manager of the Broad Street store. *Id.* As manager, Fish was the only employee in the Broad Street store, *id.* at 28:11-28:25, and her primary supervisor was Poladian, who occasionally stopped by the store to review the accounting books and collect money, *id.* at 34:18-34:22.

According to Fish, Poladian began sexually harassing her at the end of August 2013. Dkt. No. 43-1 ¶ 5. Between August 30, 2013, and September 27, 2013—which was Fish's last day working for ARoxy—Poladian sexually harassed and assaulted Fish on several occasions. Dkt. No. 44-2 at 2–3.[2] The first incident took place when Poladian came to the Broad Street store on a day that Fish had a sore throat, and he asked to see her throat. Dkt. No. 43-5 at 35:6-35:20. Poladian then made a gesture with his hand and mouth imitating oral sex and commented that Fish "must have some experience with that." *Id.* Later that day, Poladian offered Fish extra money to clean his house, and he suggested that they could have drinks and exchange massages. *Id.* at 36:9-36:20. Poladian made several other inappropriate sexual comments during September

---

[2] The cited page numbers refer to those generated by the Court's electronic filing system ("ECF").

2

2013.  Dkt. No. 44-2 at 2.  In addition to those comments, Fish claims that Poladian also sexually assaulted her on two occasions.

First, on September 9, 2016, Poladian brought Fish into the back room of the Broad Street store in order to review the store's books and inventory.  Dkt. No. 43-5 at 49:21-40:15.  Poladian then asked Fish to give him a hug, and she agreed.  *Id.*  But when Fish heard Poladian sniffing her hair, she became uncomfortable and pulled away, at which point he reached out and grabbed her breasts with both hands.  *Id.*  Fish told Poladian to stop, left the back room, and returned to the front counter.  *Id.* at 46:22-47:5.  Second, on September 16, 2013, Poladian demanded that Fish join him in the back room of the Broad Street store to review the books and inventory.  *Id.* at 54:9-55:13.  After initially refusing, Fish eventually complied.  *Id.*  Once inside, Poladian reached out, pulled Fish toward him, and, when she turned her head away, licked her face while rubbing his groin against her body.  *Id.*  With some difficulty, Fish managed to pull away from Poladian, after which he quickly exited the store.  *Id.*

On September 27, 2013, Poladian once again came to the Broad Street store and asked Fish to follow him into the back room to review the books and inventory.  *Id.* at 71:20-72:16.  When Fish refused, Poladian became upset, slamming books and throwing rags across the room.  *Id.*  Fish, concerned for her safety, left the store and called the police.  *Id.*  When the police arrived, Fish did not tell them about Poladian's history of sexual harassment and assault; instead, she said that Poladian had accused her of stealing from the store.  Dkt. No. 44-2 at 4.  With the police present, Poladian fired Fish, who retrieved her personal belongings and left the store.  Dkt. No. 43-5 at 77:4-77:18.

After timely filing a complaint with the Equal Employment Opportunity Commission, Fish filed the complaint in this action on January 27, 2015.  Dkt. No. 1 ¶ 7.  Defendants answered

3

the complaint and, after conducting discovery, filed a motion for summary judgment. Dkt. No. 43. Fish responded to the motion, Dkt. No. 44, but Defendants did not submit a reply.

## III. DISCUSSION

### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

4

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. Summary judgment may also be granted against any part of the remedy sought by the opposing party's claims. *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

**B.    Defendants' Motion**

Fish's complaint includes claims for retaliation and hostile work environment under Title VII and NYHRL, as well as a number of state tort law claims. Dkt. No. 1. Defendants' motion, however, seeks summary judgment only on Fish's hostile work environment claim and does not address any of her other claims. *See* Dkt. No. 43-2. Therefore, the Court's analysis is limited to Fish's hostile work environment claim.

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).[3] "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* In assessing the hostility of a work environment, courts examine the "totality of the circumstances." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). In particular, courts "consider[] a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is

---

[3] Hostile work environment claims under NYSHRL are analyzed according to the same standard as those brought under Title VII. *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 117 n.2 (2d Cir. 2010).

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

To establish that a work environment is objectively hostile, "a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010). In order to be considered pervasive, a plaintiff must show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan v. Metro. Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (finding five "crude and offensive" gender-based comments were "neither pervasive nor severe"). As for severity, the "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). On the other hand, even a single incident—if it is sufficiently severe—can create a hostile work environment if it transforms the plaintiff's workplace. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Here, Defendants argue that the Court should grant summary judgment on Fish's hostile work environment claim because the incidents described by Fish—which all took place during the final month of Fish's employment with ARoxy—were not sufficiently pervasive or severe. Dkt. No. 43-2 at 4. The Court disagrees. It is well established in this circuit that the kind of sexual assaults described by Fish are, on their own, sufficient to create a hostile work environment.

"Our law is clear . . . that 'even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment' under Title VII." *Richardson v. N.Y. State Dept. of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995)). In *Redd v. New York Division of Parole*, 678 F.3d 166, 169 (2d Cir. 2012), the Second Circuit reversed the district court's decision to grant summary judgment against a plaintiff claiming her supervisor "brushed up against and felt [her] breasts" on three occasions. The Second Circuit determined that, in light of those incidents, "a rational juror [could] find that [the supervisor's] conduct was not only severe, but pervasive." *Id.* at 180; *see also Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2006) ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment.").

In this case, Fish alleges that Poladian made unwanted physical contact with intimate parts of her body on multiple occasions, first by grabbing her breasts and second by licking her face and rubbing his groin against her body. Courts in this circuit have repeatedly held that the type of conduct alleged by Fish is sufficient to establish a hostile work environment claim. *See Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 663 (E.D.N.Y. 2015) (finding that where the plaintiff's boss made unwanted contact with her buttock, "that single incident of contact is sufficient to constitute the creation of a hostile work environment"); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 185 (E.D.N.Y. 2012) (finding the plaintiff's allegation that her supervisor grabbed and squeezed one of her breasts was sufficient to survive a motion to dismiss her hostile work environment claim); *Stathatos v. GalaRes., LLC*, No. 06-CV-13138, 2010 WL 2024967, *5 (S.D.N.Y. May 21, 2010) (finding that the plaintiff's allegation that her boss "intentionally groped her buttocks can alone defeat defendants' motion for summary judgment"). Fish's other allegations of sexual

harassment only support the Court's conclusion that there is an issue of material fact as to whether Poladian's behavior created a hostile work environment. Therefore, Defendants' motion for summary judgment is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 43) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 26, 2017
       Albany, New York

*Mae A. D'Agostino*
U.S. District Judge